United States Court of Appeals,

Eleventh Circuit.

No. 96-2146.

Frutoso VILLARREAL, Plaintiff-Appellant,

v.

William A. WOODMAN, Sheriff, Gadsden County, Gadsden County, Defendants-Appellees.

May 29, 1997.

Appeal from the United States District Court for the Northern District of Florida. (No. 94-CV-40583-WS), William Stafford, Judge.

Before DUBINA and BLACK, Circuit Judges, and COHILL[*], Senior District Judge.

DUBINA, Circuit Judge:

Appellant Frutoso Villarreal ("Villarreal") appeals the district court's order dismissing his complaint for failure to state a claim under either the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-209, or 42 U.S.C. § 1983. Villarreal alleges that when he was a pretrial detainee in the Gadsden County Correctional Facility ("GCCF"), Sheriff Woodham required him to perform translation services for other inmates, medical personnel, and court personnel. Villarreal contends that Sheriff Woodham told him that the Sheriff's Department would compensate him for his services, but he never received any compensation. In an issue of first impression for our circuit, we hold that pretrial detainees who perform services at the direction of correction officials and for the benefit of the correctional facility are not covered under

_____

[*]Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

the FLSA.   Accordingly, we affirm the judgment of the district court.

## DISCUSSION

This court reviews *de novo* the dismissal of a complaint for failure to state a claim, accepting all allegations in the complaint as true and construing the facts in a light most favorable to the plaintiff. *Harper v. Thomas,* 988 F.2d 101, 103 (11th Cir.1993).   A district court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Pataula Elec. Membership Corp. v. Whitworth,* 951 F.2d 1238, 1240 (11th Cir.1992) (quotations omitted).   Additionally, "[a] determination of employment status under the FLSA ... is a question of law subject to *de novo* review." *Antenor v. D & S Farms,* 88 F.3d 925, 929 (11th Cir.1996).[1]

*FLSA Claim*

Congress enacted the FLSA to eliminate "in industries engaged in commerce or in the production of goods for commerce, ... labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being

---

[1]After hearing oral argument, we raised *sua sponte* the question of whether we had jurisdiction over this appeal. *See Zatler v. Wainwright,* 802 F.2d 397, 399 (11th Cir.1986).   We specifically questioned our jurisdiction over the County and the sheriff in his individual capacity.   After requesting supplemental briefing by the parties, we are convinced that we have jurisdiction. *See Mt. Healthy City Board of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572-73, 50 L.Ed.2d 471 (1977) (jurisdiction over the County); *Hufford v. Rodgers,* 912 F.2d 1338, 1341-42 (11th Cir.1990) (jurisdiction over the sheriff); and *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-85, 106 S.Ct. 1292, 1298-1301, 89 L.Ed.2d 452 (1986) (jurisdiction over the parties with respect to Villarreal's § 1983 claim).

of workers" because such conditions "constitute[ ] an unfair method of competition in commerce[.]"  29 U.S.C. § 202(a).  In general, work constitutes employment when there is an expectation of in-kind benefits in exchange for services.  *See Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 301 & 303-04, 105 S.Ct. 1953, 1961 & 1962-63, 85 L.Ed.2d 278 (1985).

The minimum wage provisions of the FLSA apply only to workers who are "employees" within the meaning of the Act.  29 U.S.C. § 206(a)(1).  Under the FLSA, an "employee" is defined as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency,...." 29 U.S.C. § 203(d).  To "employ" is defined as to "suffer or permit to work."  29 U.S.C. § 203(g).  The Supreme Court has held that courts should apply these terms in light of the "economic reality" of the relationship between the parties. *Goldberg v. Whitaker House Co-op., Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 936-37, 6 L.Ed.2d 100 (1961).

The economic reality test includes inquiries into:

> whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

*Bonnette v. California Health & Welfare Agency,* 704 F.2d 1465, 1470 (9th Cir.1983).  In *Garcia v. San Antonio Metro. Transit Authority,* 469 U.S. 528, 546-47, 105 S.Ct. 1005, 1015-16, 83 L.Ed.2d 1016 (1985), the Supreme Court overruled *National League of Cities v. Usery,* 426 U.S. 833, 852, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245

(1976), which had erected a bar to the application of the federal minimum wage to state employees. In overruling *Usery,* the Court opened the possibility that prison authorities might be deemed FLSA employers if the *Bonnette* factors were literally applied. The first post-*Garcia* court of appeals decision addressing the relationship between prison labor and the FLSA applied an economic reality test to the facts of its case in light of the policies behind the FLSA and held that the labor in question was covered by the Act. *See Watson v. Graves,* 909 F.2d 1549, 1554 (5th Cir.1990).

In *Watson,* inmates in a sheriff's custody were assigned to work for a construction company owned by the sheriff's daughter and son-in-law. The construction company used inmate labor and subcontractors to perform the work. The inmates were paid twenty dollars a day. The district court applied the *Bonnette* factors and concluded that the inmates were not employees under the FLSA. The Fifth Circuit reversed, concentrating on the economic reality of the relationship in light of the policies underlying the FLSA. The court noted that the construction company received the benefit of the labor in the private economy without having to pay FLSA wages. The court found that such competition tended to undermine compliance with the FLSA. "Such a situation is fraught with the very problems that FLSA was drafted to prevent—grossly unfair competition among employers and employees alike." *Watson,* 909 F.2d at 1555.

Decisions subsequent to *Watson* universally have denied FLSA wages to prisoners, although the factual contexts of those decisions differ from that in *Watson.* These cases generally have

involved inmates working for prison authorities or for private employers *within* the prison compound. *See, e.g., Gambetta v. Prison Rehabilitative Industries and Diversified Enterprises, Inc.,* No. 96-4253 ___ F.3d ___ (11th Cir., May 15, 1997); *Danneskjold v. Hausrath,* 82 F.3d 37, 43 (2nd Cir.1996); *Reimoneng v. Foti,* 72 F.3d 472, 475 n. 3 (5th Cir.1996); *Henthorn v. Department of Navy,* 29 F.3d 682, 684-87 (D.C.Cir.1994); *McMaster v. Minnesota,* 30 F.3d 976, 980 (8th Cir.1994); *Hale v. Arizona,* 993 F.2d 1387, 1392-98 (9th Cir.1993) (en banc); *Franks v. Oklahoma State Indus.,* 7 F.3d 971, 972 (10th Cir.1993); *Harker v. State Use Indus.,* 990 F.2d 131, 133 (4th Cir.1993); *Miller v. Dukakis,* 961 F.2d 7, 8-9 (1st Cir.1992); *Vanskike v. Peters,* 974 F.2d 806, 809-10 (7th Cir.1992); *Gilbreath v. Cutter Biological, Inc.,* 931 F.2d 1320, 1325 (9th Cir.1991).

Our sister circuits have concluded that the underlying policies of the FLSA mandate that prisoners not be included as "employees" under the FLSA. Moreover, these decisions recognize that, although prisoners do not fall within the FLSA's list of exempted workers,[2] there is no evidence of Congressional intent to include prisoners as employees. Finally, these decisions note that the "economic reality" test does not apply in the inmate-jailer context because the FLSA presupposes a free-labor situation constrained by the Thirteenth Amendment, which does not apply to convicted inmates. By so holding, our sister circuits have adopted a broader approach to situations involving the FLSA and prisoners. This approach focuses on the economic reality of the situation as

---

[2] *See* 29 U.S.C. § 213.

a whole.  We agree with this approach and adopt the reasoning articulated by the Seventh Circuit in *Vanskike,* 974 F.2d at 809-12, in rejecting the *Bonnette* four factor standard in the prison context.

Thus, numerous courts have addressed the issue of whether a convicted prisoner is an "employee" under the FLSA.  However, no court of appeals has addressed the specific issue with which we are presented:  whether a pretrial detainee is an "employee" under the FLSA.  Nevertheless, we find these cases helpful because pretrial detainees are similar to convicted prisoners in that they are incarcerated and are under the supervision and control of a governmental entity. *Alvarado Guevara v. I.N.S.,* 902 F.2d 394, 396 (5th Cir.1990).  Clearly, pretrial detainees are in a custodial relationship like convicted prisoners.  Correctional facilities provide pretrial detainees with their everyday needs such as food, shelter, and clothing.  Convicted prisoners are likewise provided these same basic needs.  Additionally, like convicted prisoners, pretrial detainees suffer from loss of freedom of choice and privacy due to the nature of their confinement.  In light of these similarities, we deem persuasive the cases addressing the applicability of the FLSA to convicted inmates.

One case which is analogous to the present one is *Danneskjold,* 82 F.3d 37 (2d Cir.1996).  In that case, a consortium hired inmate Danneskjold to tutor other inmates.  For his work, the correctional facility paid Danneskjold between $.95 and $1.45 per day in accordance with the facility's inmate wage system.  Danneskjold filed suit alleging that he was a FLSA employee and was entitled to

receive the federal minimum wage. The district court granted the facility's motion for summary judgment and the court of appeals affirmed. The Second Circuit rejected the four-part *Bonnette* test, finding that it did not involve prison labor and was not well-suited to determining the status of prison labor under the FLSA. The court concluded that prison labor for the prison is not subject to the FLSA. The court stated:

> The relationship is not one of employment; prisoners are taken out of the national economy; ...; prisoners' living standards are determined by what the prison provides; and most such labor does not compete with private employers.
>
> ....
>
> As a result, no Court of Appeals has ever questioned the power of a correctional institution to compel inmates to perform services for the institution without paying the minimum wage. Prisoners may thus be ordered to cook, staff the library, perform janitorial services, work in the laundry, or carry ou[t] numerous other tasks that serve various institutional missions of the prison, such as recreation, care and maintenance of the facility, or rehabilitation. Such work occupies prisoners' time that might otherwise be filled by mischief; it trains prisoners in the discipline and skills of work; and it is a method of seeing that prisoners bear a cost of their incarceration.

*Id.* at 42-43. The court concluded that as long as the labor produces goods and services utilized by the prison, prisoners' labor is not subject to the FLSA. *Id.* at 43.

As in *Danneskjold,* Villarreal's translation services were performed for the benefit of the correctional institution. Villarreal's job, like Danneskjold's, was cerebral in nature and posed no risk of harm to him. Moreover, Villarreal's relationship with the Sheriff and the GCCF was a custodial relationship, not an employment relationship. Villarreal could not walk off the job site at the end of the day. Villarreal performed his services for

the benefit of the correctional facility and other pretrial detainees and convicted prisoners. There was no "bargained-for" exchange of labor which occurs in a true employer—employee relationship. *Gilbreath,* 931 F.2d at 1325.

Focusing on the economic reality of the situation in its entirety, we conclude that Villarreal is not an "employee" under the FLSA. The purpose of the FLSA is to protect the standard of living and general well-being of the American worker. Because the correctional facility meets Villarreal's needs, his "standard of living" is protected. In sum, "the more indicia of traditional, free-market employment the relationship between the prisoner and his putative "employer' bears, the more likely it is that the FLSA will govern the employment relationship." *Henthorn,* 29 F.3d at 686. Villarreal's situation does not bear any indicia of traditional free-market employment contemplated under the FLSA. Accordingly, we hold that Villarreal and other pretrial detainees in similar circumstances are not entitled to the protection of the FLSA minimum wage requirement.

*Eighth Amendment violation*

Villarreal also claims that his forced performance of translation services constitutes cruel and unusual punishment in violation of the Eighth Amendment. His claim is more properly analyzed under the Fourteenth Amendment following the Supreme Court's pronouncement on the treatment of pretrial detainees in *Bell v. Wolfish,* 441 U.S. 520, 535 & n. 16, 99 S.Ct. 1861, 1871-72 & n. 16, 60 L.Ed.2d 447 (1979).

Whether a restriction or condition accompanying pretrial

detention is punishment turns on whether the restriction or condition is reasonably related to a legitimate government objective. *Id.* at 538-39, 99 S.Ct. at 1873-74. "[A]s a matter of due process, pre[ ]trial detainees may suffer no more restrictions than are reasonably necessary to ensure their presence at trial." *Duran v. Elrod,* 542 F.2d 998, 999 (7th Cir.1976). A necessary restriction is the confinement of the pretrial detainee. *Bell,* 441 U.S. at 537, 99 S.Ct. at 1873. "Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility." *Id.* A court "must decide whether the disability [placed on the pretrial detainee] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538, 99 S.Ct. at 1873. "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment.' " *Id.* at 539, 99 S.Ct. at 1874.

To qualify as cruel and unusual punishment, conduct that is not inherently punitive must involve more than an ordinary lack of due care for a prisoner's safety or welfare. *See Whitley v. Albers,* 475 U.S. 312, 320-22, 106 S.Ct. 1078, 1084-86, 89 L.Ed.2d 251 (1986). There is no evidence that Sheriff Woodham's intent in requesting that Villarreal perform these translation services was punitive in nature. Also, these services were not restrictions placed upon Villarreal. We can assume that the performance of these services actually served to occupy Villarreal's time, keep him out of trouble, and allow him interaction with other inmates

and various individuals (e.g., doctors, probation officers, and other court personnel). Most significantly, the cerebral task of language translation posed no risk to Villarreal's safety or welfare.[3] Accordingly, we see no Eighth Amendment violation in this case.[4]

## CONCLUSION

We agree with the district court that Villarreal does not state a claim under either the FLSA or 42 U.S.C. § 1983. Accordingly, we affirm the district court's judgment of dismissal.

AFFIRMED.

---

[3]Villarreal claims that while engaging in translation services, other inmates could threaten him or impose harm on him; however, Villarreal fails to support this allegation with any specific instance of threat.

[4]Villarreal also alleges that his forced translation services constitute involuntary servitude and therefore violate his rights under the Thirteenth Amendment. This issue was not presented to the district court and is therefore not properly preserved for our review. *FDIC v. Verex Assur., Inc.,* 3 F.3d 391, 395 (11th Cir.1993).