Toni DEMAYO, Plaintiff,

v.

**PALMS WEST HOSPITAL, LIMITED PARTNERSHIP et al.,**
Defendants.

Case No. 11–CV–81211.

United States District Court,
S.D. Florida,
West Palm Beach Division.

Jan. 23, 2013.

Maxwell Miller Nelson, Sarelson Law Firm, Miami, FL, Gary Brian Englander, Matthew S. Sarelson, Conrad & Scherer, LLP, Fort Lauderdale, FL, for Plaintiff.

Allison Oasis Kahn, Carlton Fields P.A., West Palm Beach, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENNETH L. RYSKAMP, District Judge.

**THIS CAUSE** comes before the Court on Defendants' motion for summary judgment **[DE 72]** filed on October 5, 2012. Plaintiff filed a response **[DE 81]** on October 31, 2012. Defendants replied **[DE 84]** on November 12, 2012. A hearing was held on the matter on November 30, 2012, and a ruling was made to grant Defendants' motion in open court. For the reasons stated below, the Court grants Defendants' motion for summary judgment.

## I. Background

Plaintiff Toni Demayo ("Plaintiff") filed this action pursuant to the Fair Labor Standards act ("FLSA"), 29 U.S.C. § 201 *et seq.* to recover back pay and liquidated damages for work performed at Defendants Palm West Hospital (the "Hospital") and Palm West Surgicenter (the "Surgicenter"). Plaintiff was a surgical technology student at MedVance Institute ("MedVance"). As a prerequisite to graduation, she was required to complete an unpaid student externship after all other coursework was completed. In order to receive credit for the externship, Plaintiff was required to participate in 125 surgical procedures; simply observing was not enough.

From late 2009 to early 2010, Plaintiff worked at the Hospital and Surgicenter as an unpaid extern. During that time, Plaintiff performed much of the work of a surgical technologist. She participated in 185 surgical procedures and also performed various cleaning and administrative tasks, such as stocking and organizing supplies, organizing files, preparing and cleaning operating rooms, and taking out the garbage.[1] She received grades and credit for her externship, and she eventually graduated from MedVance qualified to work as a surgical technologist.

Plaintiff subsequently brought this suit for unpaid wages under FLSA. She claims her externship was a sham and that she acted as an employee at Defendants covered by the FLSA and is entitled to earn a minimum wage. Defendants argue, however, that Plaintiff participated in an externship, the benefit of which she received, and as such she is not entitled to compensation for her work because she was not an employee under the FLSA.

## II. Legal Standard on Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), he

---

1. As Defendants point out, Plaintiffs own statements regarding the amount of time spent performing menial duties such as stocking supplies are contradictory. In her initial deposition she testified she spent 30–40% of her time stocking supplies at the Hospital and 35% of her time stocking supplies at the Surgicenter. In her subsequent declaration, she expands this, representing the "great majority" of her time was spent performing such duties. For the purposes of the Court's order, however, the distinction is inconsequential. As discussed below, the Court finds Plaintiff received the primary benefit of her work as an extern for Defendants and was not an employee under FLSA.

"must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Id.* at 587, 106 S.Ct. 1348 (citing Fed.R.Civ.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

## III. Discussion

▮ The crux of the matter is whether Plaintiff was an employee of Defendants such that she was entitled to collect minimum wages under the FLSA. Under the FLSA, an "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" in turn, includes "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." § 203(d). Further, to "employ" is defined as to "suffer or permit to work." § 203(g). While the Act's definition of "employee" is somewhat circular, the Supreme Court has held that courts should examine the "economic reality" of the relationship between the parties to determine whether an individual is an employee. *See Villarreal v. Woodham,* 113 F.3d 202, 205 (11th Cir.1997) (citing *Goldberg v. Whitaker House Co-op., Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6

L.Ed.2d 100 (1961)). The onus of such proof is placed on the individual seeking compensation to show that "the activities in question constitute employment for the purpose of the Act." *Purdham v. Fairfax Cnty. School Bd.,* 637 F.3d 421, 427 (4th Cir.2011) (internal citation omitted).

The Eleventh Circuit has not yet addressed whether student externs are "employees" for purposes of the FLSA. In *Walling v. Portland Terminal Co.,* however, the Supreme Court held that the definition of an employee "was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." 330 U.S. 148, 152, 67 S.Ct. 639, 91 L.Ed. 809 (1947). The Court reasoned that to hold otherwise would categorize students as "employees of the school or college they attended, and as such [be] entitled to receive minimum wages." *Id.* In that case, the Court ruled that a railroad company's trainees were not employees because the relative benefits of the training program weighed in favor of the trainees and not the railroad company. *See id.* at 150, 67 S.Ct. 639.

Following *Portland Terminal,* courts visiting the issue recently have held that externs are not employees under the FLSA. While these decisions are not absolute, as an employment relationship is "judged by the 'economic realities' of the individual case," *Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 470 (11th Cir.1982), given the factual similarities of those cases with the present, the courts' decisions serve as useful guidelines in deciding this question now.

Two cases emerging from this district, *Kaplan v. Code Blue Billing & Consulting, Inc.,* Case No. 11–cv–81049 (S.D.Fla. Mar. 12, 2012) and *O'Neill v. East Florida Eye Institute, P.A.,* Case No. 11–cv–14384

(S.D.Fla. Apr. 17, 2012), each held that a MedVance student completing an externship at a for-profit medical corporation was not an employee within the definition of the FLSA. While the students in those cases were enrolled in a medical billing and coding program, instead of the surgical technology program, the facts of those cases and the relief sought are nearly identical to the instance case.

In *O'Neill,* the court relied on case law to determine that the student extern was not an employee. The court analogized the student's externship to the training program in *Portland Terminal,* noting that in both cases compensation for work was never contemplated by the parties, nor was it expected. *See O'Neill,* Case No. 11–cv–14384, at *5. Furthermore, the court referenced *Solis v. Laurelbrook Sanitarium and School, Inc.,* 642 F.3d 518 (6th Cir.2011), a case discussed below, in determining that the student, and not the facility, received the primary benefit of the externship. The court found that the facility "did not receive a substantial benefit" from the student's work, as she did not replace a paid worker and facility employees reviewed her work and provided feedback. On the other hand, the student received course credit and a grade for her work. *See id.* at *6. Based on those facts, the court held that the student's unpaid externship did not establish an employee-employer relationship.

 In *Kaplan,* the court based its holding on reasons similar to those in *O'Neill,* but it employed the Department of Labor's ("DOL") six-part test "to guide the determination of whether [a student extern] is in fact an employee." *Kaplan,* Case No. 11–cv–81049, at *6–12. In pertinent part, the test provides:

> Whether trainees or students are employees of an employer under the Act will depend upon all of the circumstances surrounding their activities on the premises of the employer. If *all* of the following criteria apply, the trainees or students are not employees within the meaning of the Act:
>
> (1) the training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school;
>
> (2) the training is for the benefit of the trainees or students;
>
> (3) the trainees or students do not displace regular employees, but work under their close observation;
>
> (4) the employer that provides the training derives no immediate advantage from the activities of the trainees or students; and on occasion his operations may actually be impeded;
>
> (5) the trainees or students are not necessarily entitled to a job at the conclusion of the training period; and
>
> (6) the employer and the trainees or students understand that the trainees are not entitled to wages for the time spent in training.

*Wage & Hour Manual* (1980); *see also Donovan v. Am. Airlines, Inc.,* 686 F.2d 267, 273 n. 7 (5th Cir.1982). However, as the court noted, "[t]hese factors are not exhaustive and are intended to be consistent with *Portland Terminal . . . .*" *Archie v. Grand Cent. P'ship, Inc.,* 997 F.Supp. 504, 532 (S.D.N.Y.1998) (citing *McLaughlin v. Ensley,* 877 F.2d 1207, 1211 (4th Cir.1989)). Under both *Portland Terminal* and the DOL's six-factor test, "[t]he test of employment . . . is one of 'economic reality' (4)27" *Tony and Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 301, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) (citing *Goldberg v. Whitaker House Coop.,*

*Inc.*, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961)).

In applying the DOL's six-part test, the court found that the factors weighed in favor of finding that the student was not an employee under the FLSA. *See Kaplan*, Case No. 11–cv–81049, at *8–12. The court found that the student performed coding and billing activities similar to what she would have learned about at Med-Vance, even though the majority of her time was spent on one aspect of the bill process. Additionally, the court found that the externship was for the student's benefit because she received academic credit for her work, she did not displace a regular employee, and she was adequately supervised. Furthermore, the court noted that student externs sometimes impeded the employees' work, rather than facilitated it, in that the employees took time and effort to monitor the student. Thus, the court held that the medical facility did not gain an immediate advantage from the student's externship. Finally, the court pointed out that the student had no expectation that she was would be entitled to a job at the end of her externship, or that she would be paid for the externship. In analyzing these factors, the court held that the "totality of the circumstances" demonstrated that the student was an extern and not an employee under the FLSA. *See id.* at *12.

In *Solis*, the Sixth Circuit developed a "primary benefit" test to determine whether a group of students who worked in a sanitarium were employees within the definition of the FLSA. *See Solis*, 642 F.3d at 528–29. The test was whether the primary benefit of the externship was to the student or the business where the student trained. *See id.* at 529 ("By focusing on the benefits flowing to each party, the test readily captures the distinction the FLSA attempts to make between trainees and employees."). The court held that while the sanitarium benefited from the students' work as the students performed billed services at no cost to the sanitarium, the primary benefit of the externship was to the students, who received tangible and intangible benefits in the form of hands-on training and a well-rounded education founded on responsibility and the dignity of manual labor. *See id.* at 531. Thus, the court held that the primary benefit of the training program ran to the students, and therefore, the students were not employees for purposes of the FLSA. *Id.* at 531.

■ After reviewing the facts of this case, it is clear that the totality of the circumstances establish that the "economic reality" of Plaintiff's externship with Defendants was not that of an employee, but of a trainee or extern. Like the Med-Vance students in *O'Neill* and *Kaplan*, Plaintiff understood she would not be compensated for her work and was not guaranteed a job at the end of her externship. In fact, the Commission of Accreditation of Allied Health Accreditation Programs ("CAAHAP"), which accredits MedVance's surgical technology program, prohibits compensation as a requirement of the fulfillment of a student's externship credits. Moreover, as in *O'Neill* and *Kaplan*, Plaintiff received hands-on training, participating in over 185 surgical procedures (she was only required to participate in 125), without conferring a substantial benefit to Defendants, who did not reduce facility staffing levels or payroll but spent time monitoring Plaintiff and providing feedback to MedVance of her work. Furthermore, like *Kaplan*, there is evidence that Plaintiff impeded Defendants' operations by demanding facility employees' time and resources to explain procedures, fill out evaluation forms, and decontaminate sterile fields accidentally contaminated by Plaintiff. Thus, the Court finds that realities of the relationship between Plaintiff and Defendants did not amount to an employee-employer relationship.

The gist of Plaintiff's argument to the contrary rests in the fact that she performed nonsurgical work, such as stocking instruments and supplies, organizing files, and taking out the garbage. Plaintiff's argument misses the point, however. While this type of work may, generally, be the type of work covered by the FLSA, it is part-in-parcel to the tasks a surgical technologist performs. And, the central purpose of Plaintiff's externship was to perform the work of a surgical technologist—that is, of course, the very reason she attended MedVance. *See Portland Terminal,* 330 U.S. at 150, 67 S.Ct. 639 (holding trainees were not employees despite there being "no question [ ] that these trainees [did] work in the kind of activities covered by the Act"). While these aspects of the job may be less appealing to Plaintiff, she cannot claim they are so outside her educational experience as a surgical technology extern to provide grounds for the retroactive instatement of compensation as an employee. As the court in *Solis* reasoned, Plaintiff benefited not only from the hands-on training she received by participating in surgical procedures, but also from a general gain of responsibility, knowledge, and experience earned from the less glamorous parts of her work, such as sterilizing instruments, stocking supplies, and setting up surgery rooms and cleaning them afterword. *See Solis,* 642 F.3d at 531. Thus, the Court concludes that the primary benefit of the externship flowed to Plaintiff, marking her relationship with Defendants' that of an extern, not an employee.

The above factors, taken together, demonstrate that Plaintiff's unpaid externship was exactly that—an externship, not employment. Plaintiff's relationship with De-

fendants mirrors that of the student externs in *O'Neill* and *Kaplan,* as Plaintiff entered the job without the expectation of compensation and for the purpose of gaining mandatory credit hours to graduate. She did graduate, and like the trainees in *Portland Terminal,* she worked not for the immediate advantage of Defendants, but for her own advantage. *See Portland Terminal,* 330 U.S. at 152–53, 67 S.Ct. 639. To hold otherwise would "penalize [Defendants] for providing, free of charge, the same kind of instruction [as a school] at a place and in a manner which would most greatly benefit the [student externs]." *Id.* at 153, 67 S.Ct. 639.

## IV. Conclusion

The Court has considered the motion, response, reply, applicable law, and the pertinent parts of the record. For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendants' motion for summary judgment **[DE 72]** is **GRANTED.** Final judgment will be issued by separate order.