United States Court of Appeals,

Fifth Circuit.

No. 94-30660.

Charles REIMONENQ, Jr., individually and on behalf of all those similarly situated, Plaintiff-Appellant,

v.

Charles C. FOTI, Jr., individually and in his capacity as Criminal Sheriff of Orleans Parish, ET AL., Defendants-Appellees.

Jan. 11, 1996.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REAVLEY, JOLLY and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Louisiana law authorizes its prisons to conduct work release programs in which inmates work for free-world employers at that employer's workplace. Charles Reimonenq, Jr. is an inmate at the Orleans Parish Prison who participated in the work-release program. The program is administered by the criminal sheriff of Orleans Parish, Charles C. Foti, Jr. As a condition of participating in the program, inmates must agree to contribute ten percent of their weekly net wages to an Elderly/Victim Compensation Fund set up by Sheriff Foti. Reimonenq claims that the ten percent deduction from his pay for this fund was not authorized by the Louisiana Work Release Statute, that it violates the minimum wage requirements of the Fair Labor Standards Act, and that it constitutes an unenforceable contract. The district court rejected each of these claims and granted summary judgment in favor of defendants, Sheriff Foti and the Criminal Sheriff's Office, finding that as a matter of law the Louisiana Work Release Statute authorizes the ten percent deduction, that Reimonenq is not an employee of the defendants under the Fair Labor Standards Act, and that Reimonenq's contract with Sheriff Foti is enforceable. Reimonenq now appeals. We affirm.

I

Before Reimonenq was allowed to participate in the work release program, Sheriff Foti required him to agree to a "Work Release Restitution Contract." The contract was a preprinted form

that set out the duties and responsibilities of both parties.

The contract required Reimonenq's salary to be turned in to the prison Work Release Director and credited to his work release account. It also provided that certain deductions could be made, including deductions for restitution. Deductions listed on the contract include:

1. Court Ordered Restitution Payments.

2. Elderly/Victim Compensation Fund; 10% of weekly net income be paid to the Victim and or to the Elderly/Victim Compensation Fund as determined by the Work Release Director.

3. Child Support Payments.

4. Other: The payment of the sum of $6.00 per day for food, cost to be paid to the Orleans Parish Criminal Sheriff's Office.

Reimonenq participated in the prison work release program from April 11, 1991 through June 26, 1991, during which time he deposited $1,685.01 in his work release account. Sheriff Foti deducted $168.48 from his wages for the Elderly/Victim Compensation Fund.

Reimonenq sued Sheriff Foti on behalf of himself and all others similarly situated challenging the legality of the ten percent deduction for the Elderly/Victim Compensation Fund. The parties agreed to postpone seeking certification of the class, pending resolution of the legal issues presented in cross motions for summary judgment. The district court granted summary judgment for Sheriff Foti and the Criminal Sheriff's Office on all issues. Reimonenq appeals.

II

Reimonenq first argues that the ten percent deduction caused his actual compensation to fall below minimum wage in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206 ("FLSA"). In order to prevail on an FLSA cause of action, Reimonenq attempted to show that an employer/employee relationship existed between Sheriff Foti and Reimonenq. 29 U.S.C. § 206(a)(1).[1] The district court, however, was unconvinced and granted summary judgment to Sheriff Foti, finding that the Sheriff did not "employ" the inmates participating in the work release program and, therefore, FLSA liability did not arise.

---

[1]Although some employees are exempted from various provisions of the FLSA for certain purposes, prisoners are not among the specifically exempted categories. *See* 29 U.S.C. § 213.

Reimonenq challenges the dismissal of his FLSA claim, asserting that the "economic reality"[2] of the relationship between Sheriff Foti and Reimonenq qualifies Reimonenq as Sheriff Foti's employee. We find that the "economic reality" test, which is cast as a "control" question designed to identify the responsible employer in a free-world work environment, is unserviceable, and consequently inapplicable, in the jailer-inmate context. The test has a natural bias that favors a finding that the prison custodian is the inmate's "employer" because of the considerable control a jailer must exercise over inmates. As the Seventh Circuit explained with respect to its "penological purposes" test:

> The [economic reality] factors, with their emphasis on control over the terms and structure of the employment relationship, are particularly appropriate where ... it is clear that some entity is an "employer" and the question is which one.... But the [economic reality] factors fail to capture the true nature of the relationship [between an inmate and prison custodian] for essentially they presuppose a free labor situation. Put simply, the [prison's] control over [the inmate] does not stem from any remunerative relationship or bargained-for exchange of labor for consideration, but from incarceration itself. The control that the [prison] exercises over a prisoner is nearly total, and control over his work is merely incidental to that general control.

*Vanskike v. Peters,* 974 F.2d 806, 809-10 (7th Cir.1992). Distilling this insight, many of the actions Sheriff Foti may take as Reimonenq's custodian are the very same actions that trigger FLSA "employer" status under the "economic reality" test.[3]

---

[2]In the seminal case of *Carter v. Dutchess Community College,* the Second Circuit held that, to determine whether an employment relationship exists for purposes of the FLSA, the court must evaluate the "economic reality" of the relationship, including whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. 735 F.2d 8 (2d Cir.1984). We applied this same test in *Watson v. Graves,* 909 F.2d 1549, 1553 (5th Cir.1990).

> Pointing to Sheriff Foti's authority to transfer inmates to and remove them from specific jobs, participation in setting inmate work schedules, refusal to permit inmates to perform certain tasks for their private employers (operating motor vehicles), contractual control over inmates' access to their wages, and maintenance of inmate employment records, Reimonenq urges that the control exercised by Sheriff Foti over the inmates qualifies Sheriff Foti as the inmates' "employer."

[3]We are cognizant of the dicta in *Watson v. Graves* that "[t]his court must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test." 909 F.2d 1549, 1556 (5th Cir.1990). *Watson,* however, did not reach the instant question; instead, it rejected the inmates' claim of an employer-employee relationship with their prison custodians because they had failed to "supply the court with facts necessary to determine whether they were employees." *Id.* at 1556-57.

Moreover, as a matter of law, a sheriff/custodian simply is not the "employer" for purposes of the FLSA of inmates working in a prison work release program for private employers outside the jail.[4] When prisoners are permitted to work for private employers through the prison's work release program, they have not contracted with the jail to become its employees. They are providing no compensable services for the government or otherwise benefitting it. At its root, the work release program exists for the benefit of the prisoner himself. The purpose of the program is to prepare inmates upon release from prison to function as responsible, self-sufficient members of society. Although it is true that the government requires a token reimbursement from an inmate's wages for some jail costs, the reimbursed amounts are a quid pro quo—the jail "benefits" from the disbursed amounts no more than any provider of goods and services benefits from the wages that have been paid to his customers by their respective employers. To be sure, these reimbursements for goods and services serve a fundamental purpose of the work-release program in teaching inmates to be self-sufficient through honest work and individual responsibility. Consequently, an inmate's reimbursements for maintenance costs do not constitute an economic benefit sufficient to establish an employer/employee relationship.

Furthermore, Reimonenq has cited to this court no case in which a sheriff/custodian, in his capacity as a mere intermediary between the prisoner and his private employer, has been identified as the employer under FLSA—nor have we found any such cases in our own research. Indeed, notwithstanding our dicta in *Watson v. Graves* indicating the possibility of custodian liability under the FLSA, three circuits within the last year have held that prisoners working *within* the prison system were not qualified as employees under the FLSA. *See Morgan v. MacDonald,* 41 F.3d 1291 (9th Cir.1994) (holding that inmates working in state prison programs were not considered employees under the FLSA and thus were not entitled to minimum wage); *McMaster v. State of Minnesota,* 30 F.3d 976 (8th Cir.1994) (holding that prisoners who performed work activities ranging from

_____

[4]The FLSA provides little help in determining if Sheriff Foti is acting as Reimonenq's employer. An "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" is "one who acts directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To "employ" is to "suffer or permit to work." 29 U.S.C. § 203(g).

manufacture of auto parts, file folders and clothing to data entry and telemarketing services were not employees); *Henthorn v. Department of Navy,* 29 F.3d 682 (D.C.Cir.1994) (holding that prisoner who was legally required to work and whose compensation was set and paid by prison was not employee under FLSA). In the light of this jurisprudence and its supporting policies, it would be truly anomalous to hold that an employee, working for a private, FLSA-covered employer, could also rely on his jail or prison custodian to insure full recompense under the FLSA.

We believe that this categorical rule that prison custodians are not "employers" of inmates in work release programs not only recognizes the practical realities of the custodian/convict relationship, but also is buttressed by the policy rationales underpinning the FLSA. The FLSA was enacted to improve the living conditions and general well-being of free-world American workers and their bargaining strength vis-a-vis employers, as well as to eliminate unfair competition among employers competing for business in the market and among workers looking for jobs. *Watson,* 909 F.2d at 1554 (citing *Carter v. Dutchess Community College,* 735 F.2d 8 (2d Cir.1984)). These goals are fulfilled by requiring Reimonenq's free-world employer to pay minimum wage and otherwise comply with the FLSA, a fact that Reimonenq does not contest. Imposing FLSA liability on sheriff-custodians in this situation surely does not advance the policy goals behind the FLSA.

Finally, it is reasonable to predict that, if the FLSA were interpreted as urged by Reimonenq, with sheriff/custodians acting as "co-employers" of prisoners engaged in work outside the prison, private prisoner work programs would cease or, at a minimum, be sharply curtailed. The sheriff/custodian would effectively become a quasi-insurer of the private work program, functioning as a guarantor of payment of wages should the private employer default on its FLSA obligations.[5]

---

[5]The circuit courts express some disagreement over whether the FLSA was meant by Congress to cover prisoners in the first instance. *See, e.g., Alexander v. Sara, Inc.,* 721 F.2d 149 (5th Cir.1983) (upholding determination that inmates working at prison plasma facility were not covered by FLSA, based in part on finding that Congress had not contemplated extension of FLSA to inmates); *Sims v. Parke Davis & Co.,* 453 F.2d 1259 (6th Cir.), *cert. denied,* 405 U.S. 978, 92 S.Ct. 1196, 31 L.Ed.2d 254 (1971) (observing that FLSA was probably not meant to apply to prisoners working in operations conducted on prison grounds by outside businesses). *But see Hale v. Arizona,* 993 F.2d 1387 (9th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993) (noting that prisoners were not included in extensive list of workers expressly exempted from FLSA, and therefore concluding that excluding them from Act's coverage would be encroachment upon legislative prerogative); *Carter v. Dutchess Comm. College,* 735 F.2d 8

Accordingly, we decline to take a further step down the road of mandated FLSA coverage by adopting the far-reaching result that the appellant urges on us today.

Prisoners such as Reimonenq may, of course, challenge deductions from pay or other aspects of the prison work release program as they would any other condition of incarceration—under the applicable statutory and Constitutional provisions, such as the Eighth Amendment. But a prisoner in a work release program has no separate, independent claim against the government under the FLSA simply because he is allowed to earn wages from a third party through the grace of the government.

Therefore, we hold that the district court's grant of Sheriff Foti's motion for summary judgment on the FLSA issue was not error.

## III

Reimonenq next contends that the contract, in which he agreed to the ten percent deduction for the Elderly/Victim Compensation Fund, is an adhesion contract; it should be held invalid, he argues, for a lack of consent because of duress. This challenge encompasses two separate arguments of adhesion and duress, the resolution of which are determined by Louisiana contract jurisprudence. We review grants of summary judgment *de novo. Dupre v. Chevron U.S.A., Inc.,* 20 F.3d 154, 156 (5th Cir.1994).

Louisiana law defines an adhesion contract as:

> a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection by the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms.

*McGoldrick v. Lou Ana Foods, Inc.,* 649 So.2d 455, 460 (La.App. 3 Cir.1994). Factors bearing on whether an adhesion contract is unconscionable and, therefore, unenforceable include the relative sophistication and education levels of the parties, the lettering size of the contract, and the clarity or ambiguity of the language in question. *Id.* The record before us does not disclose the educational

(2d Cir.1984) (same).

level of Sheriff Foti or of Reimonenq, so we are unable to venture a judgment on this basis.[6] However, the disputed provision is printed in lettering the same size as the rest of the contract and its terms are clear, unambiguous and were made fully known to Reimonenq before he voluntarily signed the agreement. We conclude that the district court correctly rejected Reimonenq's adhesion claim.

Reimonenq further contends that he assented to that particular term in the contract under duress. Duress may vitiate consent when the duress causes a reasonable fear of unjust and considerable injury to a party's person, property, or reputation. LSA-C.C. art. 1959. Duress results when

> a person makes an improper threat that induces a party who has no reasonable alternative to manifest his assent. The result of this type of duress is that the contract that is created is voidable by the victim.

LSA-C.C. art. 1959, official comment (b). Louisiana courts have refused to void contracts for duress where the plaintiffs have received fair benefits from their employment under the agreement and the employment positions that the plaintiffs were "forced" to accept were well paid and sought after. *Barcelona v. Sea Victory Maritime, Inc.,* 619 So.2d 741, 745-46 (La.App. 4 Cir.1993). Here, Reimonenq was not required to work outside the prison, nor was it an economic necessity. His room and board, clothing and medical needs were provided whether he participated in the program or not. Further, one of the primary goals of the work release program was to provide the participants with work experience to ease their reintegration into society. Reimonenq benefited from his participation both monetarily and in terms of valuable experience. Like the plaintiffs in *Barcelona,* Reimonenq does not argue that he did not know about the provision. Having been informed of the requirement, he easily and without damaging consequences could have rejected the opportunity to work in the program. Sheriff Foti's insistence on including the provision does not amount to duress in the absence of economic necessity or some other compelling threat to Reimonenq.

---

[6]There is no doubt, however, that the bargaining power of Sheriff Foti over Reimonenq, as his jailer, put the Sheriff in the driver's seat. We cannot give this factor much weight, however, because the imbalance of power between inmate and custodian flows from society's need for control over inmates. If we were to accord significant weight to unequal bargaining strength, it would render all agreements between jailer and inmate unenforceable.

## IV

Finally, Reimonenq maintains that neither the Elderly/Victim Compensation Fund nor the ten percent deduction is authorized under Louisiana law. First, he argues that neither the Louisiana Work Release Statute, LSA-R.S. 15:711, nor any other Louisiana law authorizes the ten percent deduction. Second, he questions Sheriff Foti's ability to set up the Elderly/Victim Compensation Fund. Permitting Sheriff Foti to make this deduction, Reimonenq argues, would permit him to require inmates to tithe the church of the Sheriff's choice or to contribute to the Sheriff's reelection campaign. This unrestrained authority, according to Reimonenq, makes the deduction illegal, albeit an acknowledged debt, much as a drug debt.

The district court granted summary judgment to Sheriff Foti on the legality of the fund and the deduction, finding that the combination of § 15:711(E)'s provisions authorized the deduction. It reasoned that under his authority to establish rules for the program and to determine who may participate, Sheriff Foti could condition participation on an inmate's willingness to contribute to the fund. Further, once an inmate has agreed in writing to contribute, the contribution may be deducted from his wages under the authority to fulfill acknowledged obligations.

Section D of the statute requires Sheriff Foti to collect the wages of the work release program inmates, to deposit the wages in a bank and to keep records showing the financial status of the inmates in the program. LSA-R.S. 15:711(D). Section E of the statute states:

> [T]he wages of any such inmate shall be disbursed by the Sheriff for the following purposes and in the order stated:
>
> (1) The board of the inmate, including food, clothing, medical and dental expenses;
>
> (2) Necessary travel expense to and from work and other incidental expenses of the inmates;
>
> (3) Support of the inmates' dependents, if any;
>
> (4) Payment, either in full or ratably, of the inmates' obligations acknowledged by him in writing or which have been reduced to judgment;
>
> (5) The balance, if any, to the inmate upon his discharge.

LSA-R.S. 15:711(E).

We conclude that the ten percent deduction is authorized by the Work Release Statute.

Subsection 4 of Section E of the statute explicitly permits the Sheriff to deduct amounts representing "obligations acknowledged by [an inmate] in writing," which Reimonenq indisputably has done in agreeing to the Work Release Restitution Contract. As far as the legality of the particular deduction, we conclude that Louisiana law does not prohibit Sheriff Foti from establishing the Elderly/Victim Compensation Fund. Reimonenq cites no authority, and we are aware of none, that forbids the compensation of crime victims by those convicted of crime. Moreover, Sheriff Foti has authority to establish rules for the work release program and this authority encompasses Sheriff Foti's decision to condition participation on an inmate's agreement to contribute to the fund. In sum, we find that the district court did not err in granting summary judgment for Sheriff Foti on the legality of the deduction and the Elderly/Victim Compensation Fund.

V

Based on the foregoing, we AFFIRM the district court's grant of summary judgment to Sheriff Foti.

AFFIRMED.