# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 28, 2010

No. 07-30997

Charles R. Fulbruge III
Clerk

JOHN D. WILLIAMS

Plaintiff - Appellant

v.

BUDDY HENAGAN, In His Individual Capacity;
GARY COOPER, Mayor, In His Official Capacity;
MIKE SUCHANEK, Individually and In His Official Capacity;
LOUISIANA DEPARTMENT OF CORRECTIONS;
C. PAUL PHELPS CORRECTIONAL CENTER;
JOANN PESHOFF, Individually and In Her Official Capacity;
CLARENCE SNYDER, Individually and In His Official Capacity;
JEAN MCCAIG, Individually and In Her Official Capacity

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES, Chief Judge, ELROD, Circuit Judge, GUIROLA, District Judge[*]
PER CURIAM:

John D. Williams ("Williams"), a former Louisiana inmate, brought a handful of claims against various state defendants and defendants from DeQuincy, Louisiana ("DeQuincy defendants")[1] for alleged injuries arising out

---

[*] District Judge of the Southern District of Mississippi, sitting by designation.

[1] These are Buddy Henagan, Gary Cooper, and Mike Suchanek.

No. 07-30997

of his confinement in the state's Phelps Correctional Center ("Phelps") and the DeQuincy, Louisiana, City Jail ("DeQuincy"). The district court held that Williams failed to exhaust his prison administrative remedies and dismissed all of his claims against the state defendants and all but two of Williams's claims against the DeQuincy defendants. The court later granted summary judgment for former Mayor Buddy Henagan[2] and Police Chief Mike Suchanek on Williams's Fair Labor Standards Act ("FLSA") and Thirteenth Amendment claims. Williams appeals. We affirm the district court's judgment.

## BACKGROUND

On November 21, 1996, Williams pled guilty to simple burglary and was sentenced as an habitual offender to eight years of hard labor. Williams arrived at Phelps Correctional Center in December 1997 and was transferred from Phelps to the Dequincy City Jail on October 7, 2000. As part of his sentence, Williams worked for the city. His duties largely included maintaining city property and facilities such as City Hall, the railroad museum, ball parks, and even the police station. Williams was a trusty and the only inmate at DeQuincy who performed work of this nature. As a result, Williams also enjoyed certain privileges unavailable in most prisons.[3]

---

[2] Henagan is deceased. Williams's claim against Henagan in his individual capacity proceeds against his estate. Gary Cooper is DeQuincy's current mayor, and he has been substituted as the defendant for Williams's official capacity claim. For convenience, we refer to these claims as claims against Henagan and omit mention of Cooper.

[3] Williams was permitted to wear civilian clothing often purchased at town expense. He had his own room in which he was allowed to have private visits with women. He had a telephone, internet access, and access to a washing machine and cable television. It was common for Williams to be driven to the store to purchase personal items like food, cigarettes, and magazines.

No. 07-30997

Williams asserts that Buddy Henagan, then the mayor of DeQuincy, and Michael Suchanek, DeQuincy's Chief of Police, forced Williams to work additional hours beyond the regular work week and sometimes for their private gain. Henagan had him wax the floors of Henagan's church; work 20 hours a day during the city's railroad festival and cook barbecued chicken continuously for over 26 hours at various local fundraisers. Up to twice a month, he was required to ride around the city with Henagan between 2 a.m. and 3 a.m. to count burned out street lights. Henagan took Williams to Texas once to transport furniture Henagan had been given. Suchanek required him to work off-hours for Suchanek's private businesses, sometimes until midnight or later and often on weekends. These ventures included Suchanek's space jump[4] rental and his grass cutting business. Williams admits he was paid occasionally for work he performed for Henagan and Suchanek.

During incarceration at DeQuincy and Phelps, Williams contends he experienced various constitutional deprivations. Williams filed two administrative grievances pursuant to the prison's Administrative Remedy Procedure ("ARP"). *See generally* La. Admin. Code tit. 22, pt. 1 § 325 (establishing administrative remedy procedures). Williams's first ARP requested incentive pay or wages for work he had performed while at DeQuincy. The second ARP requested the reason why Williams was transferred back to Phelps. Williams asserts that he filed a third ARP in October 2003. None of the claims yielded relief of any kind. Williams was released from custody on April 29, 2004.

---

[4] These are the inflatable structures in which children play sometimes called a "moonbounce" or "moonwalk" or an inflatable playground.

No. 07-30997

On March 4, 2004, Williams filed a *pro se* complaint in federal court. Williams later retained counsel and filed an amended complaint. The amended complaint alleged a variety of claims falling into three general categories. A series of claims related to his confinement at both DeQuincy and Phelps including: inadequate medical treatment, inadequate supervision of inmates, and inadequate hiring, supervising, and training practices for city employees ("confinement claims").[5] He also alleges that his work for Henagan's and Suchanek's private interests entitled him to both a minimum wage and overtime under the FLSA. Finally, he claims his work for Henagan and Suchanek violated the Thirteenth Amendment.

The state defendants moved to dismiss the claims against them. On June 6, 2005, the district court, accepting the magistrate judge's report and recommendations, dismissed the confinement claims for failure to exhaust state administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Williams filed a motion to clarify the judgment, contending that because administrative remedies were not available to him while he was confined in DeQuincy, the court should not dismiss claims arising there. The court denied the motion without an opinion. The court later granted summary judgment for Henagan and Suchanek on both the FLSA and Thirteenth

---

[5] Although we use the term "confinement," Williams raises claims based on both conditions of confinement and the episodic acts or omissions of certain defendants. *See Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997) (explaining the differences between the two types of claims).

No. 07-30997

Amendment claims.[6]    Williams appeals the rulings on these three types of claims—confinement, FLSA, and Thirteenth Amendment.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo. Deville v. Marcantel*, 567 F.3d 156, 163 (5th Cir. 2009).  A party is entitled to summary judgment  if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## DISCUSSION

### A.    Confinement Claims

Williams appeals the June 6, 2005, dismissal of his "confinement" claims against the state defendants for failure to exhaust his administrative remedies. That same order effectively dismissed Williams's confinement claims against the DeQuincy defendants for the same reasons.  Because Williams's brief does not challenge the dismissal of such claims against the DeQuincy defendants, the argument is waived.  *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000).

---

[6] The district court granted summary judgment for both DeQuincy defendants on the Thirteenth Amendment claims.  The court initially granted summary judgment only for Henagan on the FLSA claim because the magistrate judge found a question of material fact as to whether he was Suchanek's employee under the FLSA.  Subsequently, the district court, agreeing with the magistrate judge, granted Suchanek's motion for summary judgment on the FLSA claim finding that Williams was not engaged in commerce, and therefore, the FLSA did not apply to him.

5

No. 07-30997

Before reaching the issue of exhaustion, the state defendants contend that Williams's notice of appeal was defective.[7] The district court ruled in an opinion dated June 6, 2005, that "all defendants *except* Buddy Henagan and Mike Suchanek are dismissed," (emphasis added), but Williams's notice of appeal mistakenly indicated that he appealed this ruling only *as to* Henagan and Suchanek. It stated in relevant part that Williams appealed

> 3. The Opinion of the District Court rendered on June 6, 2005, dismissing the plaintiff's claims for inadequate medical treatment, conspiracy, and retaliation against defendants Mayor L.A. "Buddy" Henagan individually and in his official capacity as Mayor of the City of DeQuincy and Chief Michael Suchanek, individually and in his official capacity as Chief of Police of the City of DeQuincy for failure to exhaust administrative remedies.

As a result of this error, the notice of appeal did not name the three state defendants—Peshoff, Snyder and McCaig—at all. This court did not list them as appellees in its briefing notice, and the state defendants claim they had no notice that Williams intended to appeal the rulings concerning them until six months after the notice of appeal, when he filed his initial brief. In response to the brief, the state defendants filed a motion to dismiss the appeal as to them, or in the alternative for additional time to file a responsive brief. This court (not the present panel) denied the motion to dismiss, but granted the extension.

A party is not required to indicate the identity of any appellees in a notice of appeal,[8] but there are grounds in our precedent to conclude that if a party names some but not all defendants, the unnamed defendants are excluded.

---

[7] Chief Judge Jones dissents from the holding that the notice of appeal was sufficient and writes separately on that issue.

[8] *See Longmire v. Guste,* 921 F.2d 620, 623 (5th Cir. 1991).

No. 07-30997

Federal Rule of Appellate Procedure 3(c)(1)(B) requires that a notice of appeal "designate the judgment, order, or part thereof being appealed." We have held that when an appellant "chooses to appeal specific determinations of the district court—rather than simply appealing from an entire judgment—only the specified issues may be raised on appeal." *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 565 (5th Cir. 2003). The panel majority does not disagree with the dissent that a similar principle applies when an appellant names some but not all opposing parties.

That does not end the matter, however, because "notices of appeal are liberally construed where 'the intent to appeal an unmentioned or mislabeled ruling is apparent and there is no prejudice to the adverse party.'" *Sec. and Exchange Comm. v. Van Waeyenberghe*, 990 F.2d 845, 847 n.3 (5th Cir. 1993) (emphasis omitted) (citing *C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1056 (5th Cir. 1981)). Even "where the plaintiff appealed only a portion of the judgment," we generously interpret the scope of the appeal, and require a showing of prejudice to preclude review of issues "fairly inferred" from the notice and subsequent filings.[9] *Morin v. Moore*, 309 F.3d 316, 321 (5th Cir. 2002). We consider not only the notice, but also the appellant's brief, in

---

[9] The dissent argues that a generous interpretation of Williams's notice of appeal would be appropriate only if he was proceeding *pro se*. However, our precedent does not support such a limitation. *See, e.g.*, *United States v. Ramirez*, 932 F.2d 374, 376 (5th Cir. 1991) (interpreting notice of appeal broadly even though appellant, acting on the advice of counsel, crossed out the portion of his notice of appeal which stated that he was appealing his sentence); *Van Waeyenberghe*, 990 F.2d at 847 n.3 (holding that the Securities and Exchange Commission's intent to appeal a modified order was clear, despite the absence of an amended notice of appeal after the district court modified the original order); *Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 738-39 n.1 (5th Cir. 1980) (treating a third-party corporate defendant's notice of appeal from the denial of its motion for judgment notwithstanding the verdict as an appeal from the underlying final judgment).

No. 07-30997

determining the fairly inferred scope of the appeal. *See United States v. Ramirez*, 932 F.2d 374, 376 (5th Cir. 1991) ("[W]hen the intent to appeal an unnamed or mislabeled ruling is apparent (from the briefs or otherwise) and no prejudice results to the adverse party, the appeal is not jurisdictionally defective." (citing *Turnbull v. United States*, 929 F.2d 173 (5th Cir. 1991)).

In *Morin*, the plaintiffs appealed "from the final judgment and order dismissing . . . [their] cause of action based on 42 U.S.C. § 1983" but failed to mention state-law claims that had also been dismissed. 309 F.3d at 320. The court noted that "[i]f a mistake is made in the designation of the order to be appealed, a technical error does not bar review 'if the intent to appeal a particular judgment can be fairly inferred and if the appellee is not prejudiced or misled by the mistake.'" *Id.* at 321 (citing *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 884 (5th Cir. 1998)). The court concluded that "because (1) the . . . plaintiffs identified the judgment appealed from, (2) briefed the denial of their state-law claims, and (3) the appellees did not suffer any prejudice because they briefed the state-law issues in response . . . we will broadly construe the . . . notice of appeal." *Id.* at 321.

A similar analysis applies here. The notice of appeal correctly identified the district court's ruling dismissing the state defendants, and Williams challenged that ruling in his brief.[10] The state defendants, with additional time

---

[10] The fact that Williams identified the ruling dismissing the state defendants distinguishes this case from the Fourth Circuit's decision in *Smith v. Barry*, 985 F.2d 180 (4th Cir. 1993). In that case, the appellant's notice of appeal requested a "new trial on all issues triable by Jury," *id.* at 182, and failed to name any of the appellees. *Id.* at 183-84. The Fourth Circuit held that the notice of appeal was insufficient as to one of the omitted appellees, Dr. Barry, because the court had granted his motion to dismiss as a matter of law three years before the trial date. *Id.* at 184. The court concluded, however, that the notice of appeal *was* sufficient as to the remaining six appellees who were also omitted from the notice of appeal

8

No. 07-30997

granted by this court, filed a competent responsive brief. Accordingly, under our precedent, we may consider the appeal if the state defendants suffered no prejudice.[11]

The panel majority finds no prejudice because the issues affecting the state defendants are straightforward, and the error in the notice of appeal has not prevented them from persuading the court that they should prevail. The fact

---

because the claims against them were tried to a jury. *Id.* at 184. Contrary to the dissent's interpretation, the dispositive fact in *Smith* was not the omission of the appellees' names, but rather the appellant's failure clearly designate that he was appealing the *separate order* dismissing Dr. Barry as a matter of law as well as the claims tried to a jury. The Sixth Circuit has likewise concluded that the omission of an appellee from a notice of appeal did not render notice deficient where the appellant had appealed from *one order* granting summary judgment to both appellees. *See Int'l Union United Auto. Aerospace & Agr. Implement Works of America et al v. United Screw & Bolt Corp.*, 941 F.2d 466, 470-72 (6th Cir. 1991) ("It is the order or judgment from which the appellant appeals and not the specific mention of the appellees which provides the court and opposing parties the necessary notice."); *see also Crawford v. Roane*, 53 F.3d 750, 752 (6th Cir. 1995).

[11] The dissent emphasizes *Turnbull's* statement that "relying on [*Foman v. Davis*, 371 U.S. 178 (1962)], this court has rendered numerous decisions concluding that so long as the failure to designate the judgment appealed from did not mislead *or* prejudice the responding party, the appellant did not forfeit his right of appeal." 929 F.2d at 177 (emphasis added). The dissent fails, however, to identify any instance in which a court refused to hear an appeal because a party, while *not* prejudiced, met some lesser standard of being misled. To the contrary, our cases, including *Turnbull,* have sometimes referred to a prejudice requirement alone, indicating that whatever "mislead" means in this context, it entails significant negative consequences in the nature of prejudice. *See, e.g., Turnbull*, 129 F.2d at 176–77 ("[W]here the intent to appeal an unnamed or mislabeled ruling is apparent and there is no prejudice to the adverse party, the appeal is not jurisdictionally defective." (citation and internal quotation marks omitted)); *Morin*, 309 F.3d at 321 (quoting the "prejudiced or misled" requirement, but noting in its analysis only that "appellees did not suffer any prejudice."); *United States v.Lopez-Escobar*, 920 F.2d 1241, 1244 (5th Cir. 1991) ("When the appellant clearly intends to appeal from the underlying judgment and the appellee will not be prejudiced, we treat an appeal from an order denying a motion for new trial as an appeal from the adverse judgment itself."). This is consistent with *Foman*, where the Court held that "the defect in the second notice of appeal did not mislead or prejudice the respondent," although the notice was "inept," because the appellate briefs and other filings made the full scope of the appeal clear. 371 U.S. at 181.

No. 07-30997

that six months elapsed between the erroneous notice and the opening brief does not alone establish prejudice. Such circumstances could produce prejudice, for example if a party terminated its relationship with counsel or counsel made commitments that interfered with proper representation on appeal. Prejudice could also arise if an unclear notice and associated delay prevented a party from requesting transcripts for the record, or otherwise from adequately presenting its position on appeal.[12] But in other cases, a party may be able to effectively brief and argue the appeal, with a burden only minimally higher than it would have faced if it had received clear notice. The state defendants have asserted only that they were prejudiced because Williams had "a near five month head start in preparations." If we were facing this issue prior to briefing on the merits, it would be more difficult to determine if that were correct. But now that the state defendants have presented their case, it is apparent that they were not prejudiced.[13]

---

[12] We also note that appellants Synder, Peshoff and McCaigh are represented by the state and will not personally be liable for their legal bill. The dissent characterizes this fact as an "immaterial point." We are not entirely persuaded that this characterization is accurate, especially in light of the dissent's reliance on *Chathas v. Smith*, 848 F.2d 93, 94 (7th Cir. 1998). In *Chathas*, the Seventh Circuit specifically emphasized the fact that the appellees would not have to pay for their legal bills: "[A]ll the defendants are represented by the same counsel at no expense to themselves, and (being public employees) they will undoubtedly be indemnified should the case ever result in an award of damages. The omission of [an appellee's] name from the notice of appeal was thus a harmless error." *Id.*

[13] To be clear, we do not hold that the notice of appeal issue is moot or conclude that it is "water under the bridge" because the case has proceeded through briefing and oral argument. Rather, we conclude, based in part on that briefing and oral argument, that the issues presented are straightforward and that the error in the notice of appeal did not hinder the State defendants' ability to defend their positions on appeal. The result might be different in a closer or more complex case.

No. 07-30997

Turning to the exhaustion issue, the court unanimously concludes that the district court correctly dismissed the claims against the state defendants. Williams's claims against two state entities (Louisiana Dept. of Corrections and C. Paul Phelps Correctional Center) and state employees in their official capacities are barred by the Eleventh Amendment. Further, Williams failed to exhaust his claims against the state defendants as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) and applicable Louisiana law. His second ARP, the only relevant one in this regard, merely requested an explanation why he was transferred from the DeQuincy jail back to Phelps. This ARP fails to exhaust Williams's claims because he did not pursue it to conclusion within the prison's administrative system, *see* La. Admin. Code § 22:325(G)(4)(a). Exhaustion must be completed within a state system to allow the federal courts to take cognizance of a prisoner's claim. *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998).[14]

Williams asserts that he was not required to exhaust his other confinement claims, including claims regarding his right to attend religious services, unreasonable searches and seizures, and cruel and unusual punishment, because he has been released from prison, and release renders ARPs moot. The statutory provision Williams relies on states generally that:

> If an inmate is discharged before the review of an issue that affects the inmate after discharge is completed . . . the institution will complete the processing and will notify the inmate at his last known address.  All other [ARP] requests shall be considered moot when the inmate discharges . . . .

_____

[14] Williams has failed to brief the status of his third ARP, concerning his prison medical treatment, and has therefore waived this claim.

No. 07-30997

La. Admin. Code § 22:325(G)(9).

This provision does not excuse Williams's failure to file ARPs. It declares only that ARP requests that are filed and pending at the date of release will be moot if they have not been resolved by then. If Williams had filed appropriate ARPs and pursued them until they became moot based on his release, then perhaps he could argue that he thereby exhausted them. But § 22:325(G)(9) does not and cannot excuse his failure to file ARPs at all. Under 42 U.S.C. § 1997e(a), "a prisoner confined in any jail, prison, or other correctional facility" must exhaust remedies prior to bring suit. Williams was incarcerated when he brought this suit, and this court holds, following the Supreme Court, that whatever remedies are "available" must be exhausted before a prisoner's suit may be filed in federal court. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Williams's release during the pendency of the suit does not relieve him the obligation to comply with 42 U.S.C. § 1997e. *See Dixon v. Page*, 291 F.3d 485, 488-89 (7th Cir. 2002); *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc).

In sum, Williams's confinement claims fail to satisfy the PLRA exhaustion requirements or are waived in his briefing to this court.

## B.    FLSA Claim

Williams contends that he is entitled to a minimum wage and overtime under the FLSA for work performed for Henagan and Suchanek while confined in DeQuincy. The FLSA covers employees who are "engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1). The district court held that Williams was not Henagan's employee under the FLSA, but that Williams might be an FLSA employee for Suchanek. The court later

No. 07-30997

concluded that Williams was not "engaged in commerce" when working for Suchanek. We essentially agree with the district court.

This court has ruled that certain prisoners are not covered by the FLSA. Prisoners who work inside prison for the prison are not the prison's FLSA employees. *Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006). Prisoners working inside prison for private employers are not employees under the FLSA. *Alexander v. Sara, Inc.*, 721 F.2d 149, 150 (5th Cir. 1983). Further, work-release prisoners working outside the prison for a private employer are not FLSA employees of the prison. *Reimonenq v. Foti*, 72 F.3d 472, 475-76 (5th Cir. 1996).

In *Watson v. Graves*, 909 F.2d 1549 (5th Cir. 1990), however, the court concluded that prisoners who had not been sentenced to hard labor and were employed by a private firm while on work release were FLSA employees of the private employer. Watson and his co-plaintiff worked for the sheriff's daughter and son-in-law in their construction business, which used inmate labor. *Id.* at 1552. The prisoners were paid only 20 dollars for each long working day. *Id.* The decision expressly distinguished between prisoners sentenced to hard labor and those who are not. *Id.* at 1553, n.7.

The threshold question here is whether the FLSA can apply to inmates, like Williams, who are sentenced to hard labor but whose work is carried out for private employers outside the prison. *Watson* states because inmates sentenced to hard labor are "at the disposal of prison officials," they are never covered under the FLSA. *Watson*, 909 F.2d at 1553 n.7, 1556*; see Danneskjold v. Hausrath*, 82 F.3d 37, 42 (2d Cir. 1996) (describing *Watson* as "at pains . . . to note that labor was not part of the sentences of the prisoners in question").

13

No. 07-30997

The DeQuincy defendants essentially concede that Williams's labor inured to Henagan's or Suchanek's private benefit, but whether these arrangements were lawfully part of Williams's hard labor sentence is unclear on the record before us. In effect, Williams advocates that the FLSA, otherwise unavailable to prisoners sentenced to hard labor, applies when prison officials misappropriate prisoner labor or otherwise abuse their discretion. We decline to rule on this novel issue because even if Williams's work might be covered by the FLSA, Williams was not an "employee" of Henagan, and he was not "engaged in commerce" while working for Suchanek.

### 1.    *FLSA Employee*

The FLSA circularly defines an "employee" as "an individual employed by an employer" and an "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d), (e). The term "employ" simply means "suffer or permit to work." 29 U.S.C. § 203(g).

Because courts have found these definitions vague, the "economic reality test" has arisen to determine FLSA coverage.[15] Although *Reimonenq* stated that the economic reality test is "unserviceable and consequently inapplicable, in the jailer-inmate context,"[16] 72 F.3d at 475, this court had already held that "status

---

[15] The test stems from a series of Supreme Court cases rejecting the common-law understanding of "employee" and "independent contractor" in the context of the National Labor Relations Act, the Social Security Act, and the FLSA. In the FLSA context, the Court ruled in *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961), that "economic reality rather than technical concepts is to be the test of employment."

[16] See also *Gilbreath v. Cutter Biological*, 931 F.2d 1320, 1325 (9th Cir. 1991) (Totten, J., no majority on this point), stating:

It is equally plausible, indeed more so, that in view of the manifest

No. 07-30997

as an inmate [not sentenced to hard labor] does not foreclose inquiry into FLSA coverage," *Watson,* 909 F.2d at 1554-55. *Watson* thus evaluated the four standard factors under the economic reality test, *i.e.*, whether the putative employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Watson*, 909 F.2d at 1553.[17] Not finding these factors dispositive, the court turned to the FLSA's twin purposes to maintain a minimum living standard and to reduce unfair competition among firms seeking business and among workers seeking employment. *Watson*, 909 F.2d at 1555; *See also Hale v. Arizona*, 967 F.3d 1356, 1363 (9th Cir. 1992); *Danneskjold*, 82 F.3d at 42 (describing *Watson* as "appl[ying] an economic reality test at a higher level of generality"). Based on its unusual facts, *Watson* holds that the continuous employment of an inmate (not sentenced to hard labor) by private interests outside of the prison in a way that resembles a traditional employer-employee relationship and affects the local economic market will render the prisoner an FLSA employee of the private firm.

---

purpose of Congress in enacting the FLSA, it did not cross any member's mind-even for a moment-that felons serving hard time in prison and working in the process would be covered by this economic protection. I reject as almost whimsical the notion that Congress could have intended such a radical result as bringing prisoners within the FLSA without expressly so stating.

[17] These four factors emerged, first assembled and announced together in *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). They were first applied to prisoners in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984). This court has referenced other factors in different contexts. *See, e.g.,  Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008); *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d 1042, 1043, 1053-54 (5th Cir. 1987).

No. 07-30997

Ultimately, *Watson* fails to support Williams's claim to be an FLSA employee of Henagan. The sporadic work Williams performed for the mayor's private gain does not reflect an economic reality resembling a sustained employment relationship. The three relevant tasks, waxing the floors at Henagan's church, moving furniture on one occasion at his house, and making one trip to Texas to pick up furniture, are not fairly analogous even to seasonal employment, which is sufficiently permanent to create an employment relationship under the FLSA. *Brock*, 814 F.2d at 1053-54. Performing occasional odd jobs for a person, even apart from the hard labor prisoner status issue, does not render the worker an FLSA covered employee.

Williams's work for Suchanek, on the other hand, was continual, as he spent three days a week cutting lawns and regularly assisted with the space jumps. The district court correctly found a genuine issue of material fact whether Williams was an FLSA employee of Suchanek. Williams's case resembles *Watson* in this respect. But rather than resolve Williams's employee status conclusively, we can more readily determine that the work he performed was not in "commerce" under the FLSA.

### 2. *Engaged in Commerce*

The test this court recently articulated for FLSA's "engaged in commerce" requirement is "whether the work is so directly and vitally related to the functioning or an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it rather than an isolated activity." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007). Work that is purely local in nature does not meet the FLSA's requirements, but "[a]ny regular contact with commerce, no matter how small, will result in coverage." *Id.* at 829. In *Sobrinio*, an employee of a motel serving the Texas Medical Center worked

16

variously as a janitor, security guard, and driver for the hotel's guests. *Id.* He ferried guests on errands to local stores but never drove to the airport or other transportation centers. *Id.* The court held that although many guests were from out of state the employee was not engaged in commerce under the FLSA. *Id.* Williams's work mowing lawns and setting up the space jump is equally localized. Under *Sobrinio*, his tasks fell outside the purview of the FLSA.

## C.    Thirteenth Amendment Claim

The Thirteenth Amendment states, "Neither slavery nor involuntary servitude, *except as punishment for crime whereof the party shall have been duly convicted* shall exist within the United States, or any place subject to their jurisdiction" (emphasis added). It is undisputed that "[w]hen a person is duly tried, convicted and sentenced in accordance with the law, no issue of peonage or involuntary servitude arises." *Wendt v. Lynaugh*, 841 F.2d 619, 620 (5th Cir. 1988) (quoting *Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir. 1963)). We have also held specifically that sentences for hard labor without pay do not violate the Thirteenth Amendment. *Ali v. Johnson*, 259 F.3d 317, 318 (5th Cir. 2001)*; Mikeska v. Collins,* 900 F.2d 833, 837 (5th Cir. 1990); *Wendt*, 841 F.2d at 620-21.

Although Williams was sentenced to hard labor, he asserts that only the Louisiana Department of Corrections, not the City of DeQuincy or its officials, could force him to work. This argument is incorrect as a matter of state law. Williams's sentence confined him to the Department of Corrections, and he remained an inmate until his release on April 29, 2004. He did not have a right to be housed in a particular facility, and under Louisiana law, he was lawfully incarcerated at the DeQuincy City Jail. La. Rev. Stat. Ann. § 15:824(A) ("[A]ny individual subject to confinement in a state adult penal or correctional

No. 07-30997

institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department").

Nor did his being forced to work on private property render his labor involuntary servitude. *See Murray v. Mississippi Dep't of Corrections*, 911 F.2d 1167 (5th Cir 1990). In *Murray*, the court held that Mississippi law likely prevented an inmate from working on private property, but it "decline[d] to create a private-property exception to our prior holdings that an inmate may be compelled to work without pay," finding "no basis from which to conclude that working an inmate on private property is any more violative of constitutional or civil rights than working inmates on public property." *Id.* at 1167-68.

This reasoning also vitiates Williams's final argument. Louisiana law requires participants in a work-day release program to work more than eight but less than ten hours a day. La. Rev. Stat. Ann. § 15:708. Williams was not in such a program, but analogizing to this law, Williams argues that any more than ten hours of labor became unconstitutional involuntary servitude. Williams cites no state law limiting how many hours a prisoner sentenced to hard labor may work. But even if his working hours violate Louisiana law, a state law violation does not translate into a Thirteenth Amendment violation.[18] *Cf. Murray*, 911 F.2d at 1167-68.

---

[18] Williams failed to exhaust his administrative remedies on any Eighth Amendment claim his complaint might have alleged, and consequently, he does not pursue one here. Prison work conditions may however, amount to cruel and unusual punishment. *Howard v. King*, 707 F.2d 215, 219 (5th Cir. 1983) (holding that such a claim is not frivolous); *Jackson v. Cain*, 864 F.2d 1235, 1245-47 (5th Cir. 1989) (analyzing the claim for an Eighth Amendment violation and finding the pleading at issue there failed to state a claim for relief);.

No. 07-30997

## CONCLUSION

Henagan and Suchanek may well have abused their authority over Williams, and they do not deny many of Williams's allegations about his work for them.  None of this conduct, however, rises to the level necessary for an FLSA or Thirteenth Amendment claim.  Further, Williams failed to exhaust prison administrative remedies for his claims against the state defendants.  Accordingly, we AFFIRM the district court's judgment.

**AFFIRMED.**

No. 07-30997

EDITH H. JONES, Chief Judge, concurring in part and dissenting in part:

With due respect to the majority, I feel compelled to dissent on the narrow issue whether Williams's notice of appeal satisfied Fed. R. App. P. 3(c)(1)(B) for the confinement claims against Snyder, Peshoff, and McCaig (the "state defendants").

Consider this scenario. A plaintiff sues multiple defendants. The court dismisses claims against three of them ("A, B and C"). Two years later, the court enters final judgment in favor of the remaining defendants (D and E). The plaintiff notices an appeal against D and E only. The lawyer for A, B and C calls his clients and says:

> "Do you remember that old case? It's finished, and you're off the hook. Plaintiff didn't file an appeal against you!"

A, B & C gratefully pay their "final" bill to their lawyer.

Six months later, the lawyer stuns A, B and C when he calls back:

> "Fellows, I am sorry to have to tell you, but I just received a brief in Plaintiff's appeal, and he thinks he can reverse your judgment. Frankly, the case was over so long ago, I can't remember exactly what happened. I have to write a brief, and I'll have to reacquaint myself with the file. We can't sit out this appeal. My meter just started running again."

The only difference between the hypothetical and the case before us is the immaterial point that appellants Snyder, Peshoff and McCaig are represented

20

by the state and will not personally pay their legal bill for this surprise appeal. In this unusual situation, when a judgment is rendered for multiple defendants, the better interpretation of Rule 3(c)(1)(B) is that an appellant's notice of appeal is jurisdictionally defective as to unnamed defendants if he specifically names some defendants but not others. *See Finch v. Ft. Bend ISD*, 333 F.3d 555, 565 (5th Cir. 2003) (when an appellant "chooses to appeal specific determinations of the district court—rather than simply appealing from an entire judgment—only the specified issues may be raised on appeal").

Williams admits his notice of appeal "forgot" to name the state defendants. But "the notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal." *Smith v. Barry*, 502 U.S. 244, 248-49, __ S. Ct. __ (1992). Williams's confinement claims were alleged against five individuals: Henagan, Suchanek, Snyder, Peshoff, and McCaig. The district court dismissed the claims against all five because Williams failed to exhaust administrative remedies. If Williams had simply identified the June 6, 2005 order and claims covered by it without naming individual defendants, his notice of appeal would have included all of them. Instead, he specified only Henagan and Suchanek in his notice of appeal, emphasizing its limited nature just as he had earlier done by moving to clarify

21

No. 07-30997

the June 6 order's dismissal of his claims against Suchanek and Henagan alone. *Inclusio unius est exclusio alterius*. With this selective notice, Williams did not advise the state defendants that they were the subject of his appeal. The state defendants understandably viewed the appeal as limited to the local defendants and consequently moved to dismiss for lack of notice to them under Rule 3(c)(1)(B). Williams's untimely-stated intent is irrelevant; what is relevant is that his defective notice misled these appellants.

The majority is persuaded that, because the state defendants could successfully brief the issues in time, they suffered no prejudice and, for that additional reason, Williams's notice of appeal satisfies Rule 3(c)(1)(B). There are three flaws in this analysis. First, a court will overlook a defective notice of appeal only if "the appellee is not prejudiced <u>or</u> misled by the mistake." *Turnbull v. U.S.*, 929 F.2d 173, 177 (5th Cir. 1991) (emphasis added). Consequently, if the state defendants were either misled or prejudiced, Rule 3(c)(1)(B) should bar the notice of appeal. The state defendants were unequivocally misled. Second, the state defendants did suffer prejudice. While the panel brushes over this fact, the delay suffered was not *de minimis*. The state defendants were unaware that Williams was appealing their judgment for nearly six months after the notice of appeal was filed, and nearly three years

22

elapsed between the June <u>2005</u> order in which they were dismissed and the March 2008 filing of Williams's appellate brief.  Third, there is an obvious distinction between this case and those on which the majority relies for its prejudice analysis—every one of those cases involved a single appellee, and the only result of a vague notice of appeal was to broaden the scope of briefing. Here, the state defendants had no basis to think they had to file a brief; they were blind-sided.

Although the majority fails to cite any cases on point that concern the naming of only a selected few defendants in the notice of appeal, the Fourth Circuit had no difficulty in letting an un-named defendant off the hook for a deficient notice. *Smith v. Barry*, 985 F.2d 180, 184 (4th Cir. 1993) (on remand from 502 U.S. 244) (holding that since the notice of appeal identified six prison guards but not their co-defendant, the court did not have jurisdiction over the co-defendant). Similarly, the Seventh Circuit stated it would entertain a motion to dismiss an appeal where the notice of appeal "names all but one of the defendants [so that] the omitted defendant may reasonably believe that he is off the hook and need not hire a lawyer to defend the appeal." *Chathas v. Smith*, 848 F.2d 93, 94 (7th Cir. 1988). We should be consistent with sister circuits, not

No. 07-30997

divergent from them, especially on jurisdictional procedural points that affect how lawyers do business.

Finally, I note that Williams is represented by counsel. Were he proceeding *pro se*, I might understand the basis for the majority's generosity. In this case, however, the flawed notice, if it was flawed, was crafted by counsel and should be interpreted as written.

In sum, Williams's notice of appeal is deficient as to the state defendants because it is misleading. I would hold that this court lacks jurisdiction over Williams's appeal of the dismissal of the state defendants and would dismiss this portion of his appeal.